HUMAN RIGHTS CAMPAIGN (ref. through hrc.org)
CHRIS COULTER
8403 NANTUCKET ST
WICHITA, KS  67202

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

'12 APR 30 P12:41

CLERK, U.S. DISTRICT COURT
smg DEPUTY CLK

UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

CHRIS COULTER,       ) Case No. 12-CV-1159-JTM-KMH
                     )
        Plaintiff,   )
                     )
    vs.              )
                     )
RUSTY ECK FORD/TALX UC EXPRESS )
                     )
        Defendant    )

Plaintiff Chris Coulter brings forth the following causes of action and alleges the following:

This is a complaint for discrimination under the United States Civil rights Act, Title VII, and Civil Conspiracy to violate Plaintiff's civil rights; and Intentional or negligent infliction of emotional distress.

1.   Plaintiff is an individual and resident of Wichita Kansas, USA.

2.   Defendant is a corporation and at the time of this complaint, a resident of Wichita Kansas, USA.

3.   On or about June 25, 2009, Plaintiff contacted Defendant asking for time off to have a back fusion surgery and to give his immune system a chance to increase his CD4 count and T-cell count. As an HIV infected individual, Plaintiff was in a very compromised position due to Plaintiff needing surgery and the levels of Plaintiff's immune system being so low. Plaintiff had been struggling with a lung infection and bronchitis from having the flu in April.

4. On or about June 25, 2009, Plaintiff received emails from both the General Manager, Craig Minten and the Chief Financial Officer, Janet Cervantes told Plaintiff to file for FMLA but the law requires a full 12 months of employment and the Plaintiff's start date was February 02, 2010. At this time the Plaintiff received an email from the CFO asking him if he had HIV.

5. On or about June 26, 2009, Plaintiff received a series of emails from the General Manager and the CFO that were encouraging and if Plaintiff ever needed anything, they would be willing to assist. It was unheard of that Plaintiff chose to be attracted to the opposite sex and was often called Charmuthra and if Plaintiff performed sex acts with other men by salesman that never met me when Plaintiff started. Charmuthra was said to the Plaintiff often and done by Sales Manager Danny Aldwyn and a secondary lending individual that spoke the same language but only worked on people that could not get financed conventionally. Danny was from Jordan so the Plaintiff is unsure of what the exact language was.

6. On or about June 27, 2009, Plaintiff was receiving texts from employees specifically asking questions about Plaintiff's absence and if Plaintiff had HIV. During this time, Plaintiff had been told that Danny Aldwyn was in the finance office acting irate, being loud and questioning whether or not he or his kids could have contracted HIV/AIDS. Other more obscene things were supposedly said and then had asked since they had worked and ate lunch and dinner at the same desk. Plaintiff is assuming this is when the rumors started that Plaintiff had AIDS and would not be returning to work because of this incident and then with the ending of sent emails by the Defendant.

7. On or about June 28, 2009, the Plaintiff was contacted by phone from the parts manager and was told that a sales consultant just asked him if Plaintiff had AIDS and if Plaintiff was ever returning to work or not. This

employee was Nick Brown, an Internet employee. During this time, Plaintiff also spoke to the Finance Director and he suggested that the Plaintiff tell his family, as he has been a personal friend for almost 12 years and knew my mother and sister very well.

8.  Plaintiff became very concerned and felt forced to tell his family, which caused immediate severe emotional distress for Plaintiff, his mother and sister. The Plaintiff through all the years he knew he was HIV+, had kept it from everyone the Plaintiff knew but his cousin who lived with him at the time. To sum up a majority of what the Plaintiff is suing for is the Plaintiff's Civil rights and violation of the Plaintiff's Privacy Act. This is the time the crippling rumor of having AIDS, how many people were involved and who they were.

9.  Plaintiff brings forth the following counts and allegations supporting his cause of action:

### NEGLIGENCE

1. Defendants, specifically the owner and the CFO, were interviewed by a member of the EEOC in which resulted in the first notice of appeal to the EEOC from the Plaintiff. The same representative from the EEOC was asked to investigate further and talk to specific employees who were allegedly involved in spreading the rumor. The decision was made because after reading the first report there where several discrepancies from the all of the emails submitted. It would seem the Defendants were intensely interested in everyone not talking about this the longer communication was going on. There were specific examples of an untrue series of events that the investigator summed up in her investigation. One important statement was that the Plaintiff never resigned and the Defendant ended Plaintiff's employment on September 3, 2010 in an email.

2. After the representative from the EEOC sent the Plaintiff another investigation summary of what seemed to have gone on and that there were never any rumors going around the dealership about the Plaintiff having HIV. The same results as the first investigation were very similar and after reading her letter, the Plaintiff noticed blatant discrepancies in her report and the actual emails that were part of the original contacts between the Plaintiff and the Defendant. At some point, the CFO sent an email to the Plaintiff that things didn't seem to be as bad as the Plaintiff thought and that the CFO would have a meeting with the GM to take care of it the situation. This is also an obvious incident that there was a rumor, the GM didn't know how it got out. He had a second manager's meeting stating it was just back surgery and Plaintiff would be back to work soon, took place shortly after the CFO had meeting with the GM.

3. Plaintiff does not disagree with the company releasing him on September 3, 2009. The separation notice sent by the Defendant to the Plaintiff in an email. At that time Plaintiff knew he could not work and was unsure of when and how he was going to have back surgery. Plaintiff was also very much concerned about whether or not Plaintiff's mental state would be as much of an issue as it was so overwhelming. The rumors were still circulating during this time as Plaintiff received another email from the GM stating that he had put an end to the rumors and had another meeting with the managers.

4. Plaintiff had a combination of mentally damaging times dealing with the denial to receive any unemployment benefits, how Plaintiff didn't qualify initially for Medicaid and other beneficial programs. The failed attempts to increase my CD4 count with my HIV doctor were causing me to become more of a recluse. Stress, and the overwhelming

amount Plaintiff had and still was receiving from the dealership, is one of the main factors that lowered both of my HIV CD4 and T-cell counts. This entire series of events was beyond anything Plaintiff had ever experienced.

5. Plaintiff was desperately trying to find common ground with the first Psychologist and it was causing him to feel worse, crying all the time, very depressed and becoming mentally worse than Plaintiff felt that he was before. Plaintiff knew through conversations with my Psychologists that Plaintiff was having a mental breakdown and the HIV doctor had suggested to change doctors. He then provided another referral who, had diagnosed with Plaintiff as having PTSD. Plaintiff is still extremely untypically anxious when the days of the appointments are coming up and usually leave feeling worse.

6. Plaintiff is trying to get back to a productive life. This was difficult as every insurance company Plaintiff had applied for consistently denied Plaintiff. Secondly, Plaintiff's mental state of mind was so damaged that Plaintiff was so bad all that could be done was turn the phone off and stay in bed. Plaintiff felt that he had lost all contact with whom he was. The mental situation of the Plaintiff's mother still felt shamed after finding out about my condition. This contributed to and caused many horrible feelings, as Plaintiff had never disclosed his condition with her. For months, the mentally unstable Plaintiff lived through the Plaintiff's mother checking on the Plaintiff's condition nightly always worrying.

7. Plaintiff contacted the Defendant's insurance company on or about June 25, 2009 asking them if Plaintiff still had coverage and what was the process of Cobra? They informed Plaintiff that the Defendant had cancelled insurance the very same day Plaintiff sent the email

      asking for time off. The CFO also said they she spoke with the insurance company and they were waiting for a certificate of coverage, which Plaintiff was told by the insurance company, was just my insurance card. There is also the ability for the Defendant to waive the 30-day waiting period but the CFO was unaware of it but if we did it, it would have to be when Plaintiff was signed up. Because of the difference of that day and starting on the second of the month of February 02, 2009, the Plaintiff's insurance certificate wasn't issued until April of that year. The insurance company said they were waiting for the certificate of coverage from the Defendant.

8. Plaintiff, at no time told the sales manager, parts manager or any other sales consultant that Plaintiff had HIV and during this time Plaintiff was diagnosed as having AIDS as the T-cell count dropped below 200 shortly after leaving the dealership. Plaintiff, for a few months prior to the back operation kept focusing of having AIDS for the first time. The Plaintiff at the time had only told a handful of the closest friends about Plaintiff's condition. Plaintiff would never disclose anything from the Privacy Act or the Civil Rights Act. The Plaintiff felt that if that happened, there would be more stress and problems all of this while the T-cell count was <200.

9. Plaintiff had denied himself the right to suit for several weeks until Plaintiff felt that there would never be a want for this to happen to someone else and they had to go through this and something just told me it had to be done. Plaintiff had spent 10 long years working to get the level of management that Plaintiff was at and had taken this position because for once in 10 years, Plaintiff was able to work there again because of the owner. Plaintiff was able to see his

family consistently. This was the Plaintiff's choice and that's why there was such a desire to work with Defendant again, specifically the owner. The Plaintiff's first month, led the team (dealership) to 6th in the nation. The Plaintiff at the time was deemed a very valued employee to the Defendant. Now what the Defendant once told the Plaintiff, he is not automatically given the job back and at the same pay.

10. Plaintiff had completed his physical therapy after the back surgery and as that was finally completed the Plaintiff began to contact via email and texts, the owner and the GM if Plaintiff could return to work. All together they may have received 10 of this type of contact and Plaintiff never received a response from either of them. Plaintiff then knew he had to move again just to provide for his family as Plaintiff thought if the Defendant knew Plaintiff was ready to work there would be a response from the Defendant, specifically the owner and GM. Plaintiff requests were never answered by the Defendant at any time after the Plaintiff was able to work again.

11. Defendant did email back in with a direct quoted from the CFO saying "they want to make it clear that when I am able to come back to work, we would like you to consider applying for reemployment. While we cannot guarantee you the same position with the same rate of pay, you will certainly be considered for any position you are qualified for." Of course, the Plaintiff took this literally as anyone would and Plaintiff would have to go through the interview process again and if there were an opening, Plaintiff would be considered for it. This is directly opposite from the Defendant's desire to have the Plaintiff return to work when ready. This basically verified that

1  Plaintiff would not be able to come back to the old position and
2  would have to take a cut in pay or the Defendant would never had put
3  that in their email. At this time, the Defendant never sent the
4  Plaintiff a response to the emails or a phone call from Defendant to
5  even discuss my return. Defendant knows and has personally been
6  accredited with on how good Plaintiff's skill sets are for the
7  position held.

8  12. Plaintiff seeks damages from what was originally and still is the
9  defamation that was obviously occurring. Plaintiff had to wait until
10 the EEOC sent the second investigation report, which was sent to
11 Plaintiff from the EEOC on December 19, 2011.

12 13. After receiving the report, Plaintiff had also received a right to
13 sue letter. A copy of it is attached.

14 14. Plaintiff seeks damages for discriminatory conduct of Plaintiffs
15 former employer. The employer discriminated against the Plaintiff
16 because of his medical conditions and limitations caused by the
17 medical conditions.

18 15. Plaintiff demands a jury trial in Wichita, KS,

19 16. Plaintiff requests that the trial be conducted in Wichita, Kansas.

**DAMAGES**

WHEREFORE, Plaintiff seeks compensatory and punitive damages along with court costs for, loss of potential wages, pain and suffering, mental and emotional damage distress and defamation and other relief as deemed proper by the Court.

Dated this 30th day of April, 2012

_____
Chris Coulter



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Kansas City Area Office

Gateway Tower II
400 State Avenue, Suite 905
Kansas City, KS 66101
(913) 551-5655
TTY (913) 551-5657
FAX (913) 551-6957
Writer's Direct Dial: (913) 551-5758

December 19, 2011

Mr. Chris Coulter
8403 Nantucket Street
Wichita, KS 67212

RE: Charge No. 563-2010-71621
    Chris Coulter v. Rusty Eck Ford

Dear Mr. Coulter:

This letter is being written as the **PRE-DETERMINATION INTERVIEW** regarding the above referenced charge of discrimination. You allege you were sexually harassed and discharged because of your sex, male. You allege your medical condition was disclosed, your medical insurance benefits were denied and that you were discharged because of your disability.

The evidence shows you were hired on or about February 2, 2010 as the General Sales Manager.

You allege you were subjected to verbal comments from co-workers regarding a sex act and derogatory names for a gay person between the months of February 2010 to April 2010. The individuals you identified were interviewed and denied making those comments. Because the individuals denied the allegation and there were no witnesses there is not conclusive evidence to show you were sexually harassed.

The evidence shows you sent an email to General Manager Craig Mitten and Chief Financial Officer Janet Cervantes on or about June 25, 2010 requesting time off. The evidence shows your request for leave was granted. The evidence shows you wanted management to tell your co-workers that you were off work to have back surgery while disclosing the true reason for your request for medical leave to Mr. Mitten and Ms. Cervantes.

You allege in the day or two after you emailed Mr. Mitten and Ms. Cervantes that you had received information that Sales Manager Danny Alwidyan had been talking about the true reason you were on medical leave. You speculated that Mr. Mitten had shared confidential medical information with Mr. Alwidyan.

The evidence shows you emailed Ms. Cervantes on or about June 29, 2010 stating "I heard last night that Danny is asking others" about your medical condition and that you were "sure the whole staff knows." Ms. Cervantes was interviewed and she stated that she began an investigation. Ms. Cervantes said she found that Mr. Alwidyan had been worried when you left work with no explanation doubting that the reason you were away from the job was because of your back. Through witness testimony the evidence shows Mr. Alwidyan had speculated with a few co-workers about the true reason for your medical leave from past experiences he had with you. Ms. Cervantes said once she learned about Mr. Alwidyan's speculations she informed him that he was not to discuss your or any other employee's medical condition. Ms. Cervantes stated she shared this message with Mr. Mitten as well. Witness testimony shows that members of management would tell anyone asking about your medical condition that you were having back surgery. The evidence does not support that members of management disclosed information about your disability.

The evidence shows on or about July 16, 2010 you were notified by the Company's third-party administrator of the health care plan that your health insurance coverage had been terminated. The Company stated for an employee to be covered he or she has to be regularly scheduled for a minimum of 32 hours a week. The evidence shows the letter also advised you of your rights to continue your coverage with COBRA payments. The evidence shows your health insurance was canceled because you were not working and not because of your disability.

Ms. Cervantes stated that she spoke to you on the phone on or about July 21, 2010 in which she assured you that you were still an employee of the Company. Ms. Cervantes said that you had stated that you were working on getting your health in a good place so you could have your back surgery and return to work.

The evidence shows on or about August 31, 2010 you emailed Ms. Cervantes stating "my insurance won't cover back surgery" and asking for an update on your employment status.

The evidence shows on or about September 3, 2010 Ms. Cervantes emailed you back. The email stated "now that we know your surgery will not be occurring anytime soon, it is necessary to end your employment effective today." Ms. Cervantes said the reason she decided to discharge you was because there was no end in sight as to when you would be returning.

An employer does not have to provide indefinite leave for an employee and therefore it appears the Company had a legitimate, non-discriminatory reason to discharge you.

The evidence shows the Company had hired an applicant into the General Sales Manager position while you were on medical leave. The evidence shows that the applicant was hired out of the Omaha location and the Company indicated that Mr. Mitten thought the applicant would work well as he could be transferred to another location for when/if you came back to work.

Therefore, it is my recommendation to the Area Director that the charge be dismissed because it is unlikely the charge would result in a violation of the law. Upon dismissal, you will be issued a Notice of Right to Sue. You have ninety (90) days from the date of receipt of the Right to Sue to file a private lawsuit against the employer in Federal District Court. Should you have any new relevant information which you believe would change the outcome of the investigation, please submit it **in writing by December 29, 2011.**

Sincerely,

Anne Mergenmeier
Investigator



**U.S. Equal Employment Opportunity Commission**
**Kansas City Area Office**

Gateway Tower II
400 State Avenue
Kansas City, KS 66101
(913) 551-5655
TTY (913) 551-5657
FAX (913) 551-6956

Respondent: RUSTY ECK FORD
EEOC Charge No.: 846-2010-71621
FEPA Charge No.:

*Call and let her know about*

913 551 6957

November 5, 2010

Chris Coulter
8403 Nantucket St.
Whichita, KS 67212

Dear Mr. Coulter:

This is with reference to your recent written correspondence or intake questionnaire in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

- [X]    Title VII of the Civil Rights Act of 1964 (Title VII)

- [ ]    The Age Discrimination in Employment Act (ADEA)

- [X]    The Americans with Disabilities Act (ADA)

- [ ]    The Equal Pay Act (EPA)

- [ ]    The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form.

To enable proper handling of this action by the Commission you should:

  (1) Review the enclosed charge form and make corrections.

  (2) Sign and date the charge in the bottom left hand block where I have made an "X". For purposes of meeting the deadline for filing a charge, the date of your original signed document will be retained as the original filling date.

  (3) Return the signed charge to this office.

Before we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court.

[X]          Please be aware that after we receive your signed Form 5, the EEOC will send a copy of the charge to the agency listed below as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.

Kansas Human Rights Commission
900 SW Jackson
Room 568 South
Topeka, KS 66612

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please also notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process. If you have any questions, please call me at the number listed below. If you have to call long distance, please call collect.

Sincerely,

for Anne Mergenmeier
Investigator
(913) 551-5758

Office Hours: Monday – Friday, 8:00 a.m. - 4:30 p.m.
www.eeoc.gov

Enclosure(s)
　　Copy of EEOC Form 5, Charge of Discrimination
　　Copy of EEOC Uniform Brochure, "What You Should Know Before You File A Charge With EEOC."

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Chris Coulter<br>8403 Nantucket St.<br>Wichita, KS 67212 | From: | Kansas City Area Office<br>Gateway Tower II<br>400 State Avenue<br>Kansas City, KS 66101 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2010-71621 | Anne Mergenmeier,<br>Investigator | 551-5849<br>(913) 551-5758 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Billie I. Ashton,
Director

2-1-12
*(Date Mailed)*

Enclosures(s)

cc:
Janet Cervantes
Chief Financial Officer
RUSTY ECK FORD
7310 East Kellogg
Wichita, KS 67207

Brad J. Schlozman
Hinkle Law Firm LLC
301 N. Main Street, Suite 2000
Wichita, KS 67202

Received  12-06-10  10:10am   From-   To-EEOC   Page 001

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 846-2010-71621 |

Kansas Human Rights Commission ___ and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Chris Coulter | (316) 655-4860 | 03-17-1969 |

Street Address: 8403 Nantucket St., Wichita, KS 67212

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| RUSTY ECK FORD | 101 - 200 | (316) 685-9211 |

Street Address: 7310 East Kellogg, Wichita, KS 67278

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 02-01-2010   Latest: 09-03-2010
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired on or about February 2, 2010, as the General Sales Manager. During February 2010 and April 2010, I was subjected to sexual harassment (verbal comments) by co-workers. On or about June 25, 2010, I emailed my employer advising I needed a few days off for a medical condition. A medical leave of absence was granted. While on the medical leave of absence I became aware that my medical condition had been disclosed to employees. On or about July 20, 2010, I was informed that I no longer had medical insurance. On or about September 3, 2010, I was discharged.

Management informed me that my medical insurance stopped because I didn't meet the 32 hours/ week requirement to keep it active. Management informed me that I was discharged because they learned that my surgery wouldn't be happening as soon as they thought.

I believe I was sexually harassed and discharged because of my sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe my medical condition was disclosed to employees, my health insurance cancelled, and that I was discharged because of my disability, in violation of the Americans with Disabilities Act Amendments Act of 2008.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 9-29-10

X [signature]
Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)